# EXHIBIT A





SEAlimited.com

7001 Buffalo Parkway
Columbus, OH  43229

614-888-4160
800-782-6851

January 29, 2021


Jeffrey J. Lorek, Esq.
Clark Hill PLC
10001 Pennsylvania Avenue, NW, Suite 1330 South
Washington, DC 20004

Re:  **Preliminary Safety Evaluation**
*Jimmy Graham v. Civil & Environmental Consultants, Inc. and
ArcelorMittal Steel USA, LLC.*
Date of Loss:   December 2, 2016
Loss Location:  ArcelorMittal Georgetown
420 South Hazard Street
Georgetown, South Carolina 29440
Case No. 2019-CP-2201152
**S-E-A Matter No. 01.110302**

Dear Mr. Lorek:

SEA, Ltd. (S-E-A) was contacted regarding the above-referenced incident and requested to conduct an evaluation and form an opinion(s), if possible, as to the responsibilities associated with the December 2, 2016 incident involving Mr. Jimmy Graham. The investigation was assigned to S-E-A Senior Safety and Health Consultant Jason E. Henthorn.


**S-E-A has reviewed the following file materials provided pertinent to the above-referenced matter:**

- Thompson Industrial Services, LLC Policy Manual, Policy No. S005, *Confined Space Procedures*, Issued January 2009, Revised December 2015.
- Civil & Environmental Consultants, Inc. Field Report, December 1, 2016.
- Georgetown County Fire Department/EMS records, December 2, 2016.
- Thompson Industrial Services, LLC Confined Space Entry Permit, December 2, 2016.
- Thompson Industrial Services, LLC Incident Investigation Form, December 3, 2016.
- Civil & Environmental Consultants, Inc. Draft Incident Report, December 6, 2016

- Civil & Environmental Consultants, Inc. Meeting Minutes, December 8, 2016.
- Email string from Suzie Hyman to Erika Young, September 9, 2019.
- Jimmy Graham's Complaint, November 26, 2019.
- Deposition transcript of Cody Meredith, November 6, 2020.
- Deposition transcript of Jimmy Graham, December 9, 2020.
- Deposition transcript of George Tyrian, P.E., December 10, 2020.
- Jimmy Graham's Expert Disclosure, December 14, 2020.
- Expert report by Alan O. Campbell, P.E., December 14, 2020.
- Deposition transcript of Douglas Bley, December 18, 2020.
- Deposition transcript of Chad Bardon, January 7, 2021.
- Deposition transcript of James Richardson, January 7, 2021.
- "Root Cause Analysis and Recommended Fixes, 2 Dec Incident at ArcelorMittal Steel, Georgetown SC" report, undated, unknown author.
- Miscellaneous scene photographs.

**In addition, S-E-A also reviewed the following:**

- *Occupational Safety and Health Act of 1970*, Occupational Safety and Health Administration (OSHA), Washington, DC, as amended through January 1, 2004 (OSH Act of 1970).
- OSHA Directive No. CPL 2-00.124, *Multi-Employer Citation Policy*, 1999.
- OSHA 29 CFR 1910, Subpart A, *General*.
- OSHA 29 CFR 1910, Subpart B, *Adoption and Extension of Established Federal Standards.*
- OSHA 29 CFR 1910, Subpart D, *Walking Working Surfaces.*
- OSHA 29 CFR 1910, Subpart I, *Personal Protective Equipment.*
- OSHA 29 CFR 1910, Subpart J, *General Environmental Controls.*
- OSHA 29 CFR 1910.147, *The Control of Hazardous Energy (Lockout/Tagout).*
- OSHA 29 CFR 1910.272, *Grain Handing Facilities.*
- OSHA 29 CFR 1926, Subpart C, *General Safety and Health Provisions.*
- OSHA 29 CFR 1926, Subpart E, *Personal Protective and Life Saving Equipment.*
- OSHA 29 CFR 1926, Subpart G, *Signs, Signals, and Barricades.*
- OSHA 29 CFR 1926, Subpart M, *Fall Protection.*
- OSHA 29 CFR 1926, Subpart R, *Steel Erection.*
- OSHA 29 CFR 1926, Subpart AA, *Confined Spaces in Construction.*
- OSHA Standard Interpretations, *General Industry Standards to Construction Activities*, OSHA, <https://www.osha.gov/laws-regs/standardinterpretations/1993-12-03>, accessed January 26, 2021.
- OSHA Standard Interpretations, *CPL 02-00-124; Multi-Employer Citation Policy*, OSHA, <https://www. osha. gov/laws-regs/standardinterpretations/2017-11-09>, accessed January 27, 2021.
- OSHA Standard Interpretations*, Applicability of Construction Standards to Certain Commercial Sign Installation Activities*, OSHA, <https://www.osha.gov/laws-regs/standardinterpretations/2019-10-01>, accessed January 28, 2021.
- OSHA Safety and Health Topics, *Confined Spaces*, OSHA, <https://www.osha.gov/confined-spaces>, accessed January 27, 2021.
- OSHA State Plans, *South Carolina*, OSHA, <https://www.osha.gov/stateplans/sc>, accessed January 27, 2021.

- ISO 7149, *Continuous Handling Equipment – Safety Code – Special Rules*, 1st ed., International Organization for Standardization, Switzerland, 1982.
- ANSI [American National Standards Institute]/ASSE A10.33-2011, *Safety and Health Program Requirements for Multi-Employer Projects*, American Society of Safety Engineers (ASSE), Des Plaines, IL, 2012.
- ANSI/ASSE A10.38-2000, *Basic Elements of an Employer's Program to Provide a Safe and Healthful Work Environment*, ASSE, Des Plaines, IL, 2007.
- ANSI/ASSE A10.39-1996, *American National Standard for Construction and Demolition Operations Construction Safety and Health Audit Program*, ASSE, Des Plaines, IL, 2005.
- ANSI/ASSE A1264.1-2007, *Safety Requirements for Workplace Walking/Working Surfaces and Their Access; Workplace, Floor, Wall and Roof Openings; Stairs and Guardrails Systems*, ASSE, Des Plaines, IL, 2007.
- ANSI/ASSE Z117.1, *Safety Requirements for Entering Confined Spaces*, ASSE, Park Ridge, IL, 2016.
- ANSI/ASSE Z490.1-2009, *Criteria for Accepted Practices in Safety, Health, and Environmental Training*, ASSE, Des Plaines, IL, 2009.
- ASME B20.1-2015, *Safety Standard for Conveyors and Related Equipment*, American Society of Mechanical Engineers, New York, NY, 2015.
- Harichandra K. Chavhan, et al., "Design and Analysis of Bucket Elevator," Vol. 9, Issue 3, *International Journal of Scientific & Technology Research*, March 2020, pp. 3296-3301.
- *Chains for Power Transmission and Material Handling:  Design and Applications Handbook*, American Chain Association, Naples, FL, 1982.
- NIOSH, *Confined Spaces*, National Institute for Occupational Safety and Health, <https://www.cdc.gov/niosh/topics/confinedspace/>, accessed January 27, 2021.
- *ArcelorMittal Announces Closure of Georgetown Wire Rod Facility*, ArcelorMittal, May 14, 2015, <https://usa. arcelormittal.com/news-and-media/announcements/2015/may/05-14-2015>, accessed January 26, 2021.
- Various industrial standards and guidelines as applicable.

**INCIDENT DESCRIPTION**

Based upon the review of the aforementioned materials, ArcelorMittal Georgetown (Georgetown) was a steelmaking/wire-rod facility located in Georgetown, South Carolina. Georgetown was scheduled to be closed during the third quarter of 2015 due to the market conditions. The closure reportedly affected 226 employees, including salaried, as well as members of United Steelworkers Local 7898 and onsite contractors.

ArcelorMittal USA Companies (ArcelorMittal) entered into an Environmental Services Master Agreement with Civil & Environmental Contractors, Inc. (CEC) on February 18, 2009. CEC, as the environmental contractor, was to provide environmental remediation, clean-up, and related services through the acceptance of purchase orders. The Agreement included language on safety, compliance, scopes, subcontractors and suppliers, personnel, use of the owners' property, indemnification, etc.

Georgetown operated a permitted wastewater treatment plant and as part of the facilities' closure CEC prepared and submitted a Closure Plan to the South Carolina Department of Health and Environmental



Control. In turn, Thompson Industrial Services, LLC. (TIS) issued a proposal to CEC as part of the Georgetown closure in which TIS was to provide site clean-up and filtration services for CEC. Areas involved in the TIS proposal included the hydromation scale pit, hydromation sludge handling area, hydromation pump sump, filter backwash tank, hydromation filters, sludge drying bed, cooling tower make-up water pump, caster cooling bed, and cyclone pit (also known as the "rolling mill pit"). On September 9, 2016, TIS entered into an agreement with CEC that included language related to scope, compliance, safety, indemnification, supplementary information, etc.

CEC reports offering their clients expertise in areas such as air quality, civil engineering, ecological science, environmental engineering and sciences, manufacturing infrastructure services, surveys, waste management, and water resources. Reporting more than 1,000 team members and 26 locations nationwide, CEC boasts being committed to continuous improvement in the area of health and safety throughout all aspects of its business.

TIS advertises that few can match their commitment to safety, as they provide a top-quality service experience from start-to-finish. TIS reports offering the broadest line of industrial cleaning services with specialized equipment, technology, and personnel to solve all of their clients' unique challenges. With over 20 service locations and complete mobility, TIS reports serving the southeast and central United States for more than 30 years, as well as global markets and industries.

During the afternoon of December 2, 2016, Messrs. Jimmy Graham and James Richardson, employees of TIS, were within the rolling mill pit. The two employees were utilizing TIS water pressure to push mill scale to a point in the pit where it could be removed utilizing the TIS vacuum truck. Messrs. Graham and Richardson were reportedly utilizing the appropriate personal protective equipment (PPE), including safety harnesses, in conjunction with TIS' Confined Space Permit. Allegedly, a TIS operator and TIS hole watch were present at the surface level, as well as a number of other TIS employees.

TIS reported that on the fifth day of vacuuming operations, enough material had been removed from the rolling mill pit (approximated by TIS to measure 20' x 20', with a depth of 25') to expose the lower portion of an electric-driven bucket elevator (approximated by TIS to measure 7' x 12', with a height of 40'). The elevator was purportedly located in the middle of the pit and the TIS employees were vacuuming around the elevator. A diagram of the area indicates the elevator to be 35' high and was placed on scale/material. The drawing also suggests that sloped sides existed within the pit at the location of the elevator, as well as the location of the TIS Vacuum Truck and Combo Rig, operating at the surface of the pit.

On December 2, 2016, TIS conducted its pre-job meeting and reviewed its Job Safety Hazard Analysis, as well as its Confined Space Permit. TIS, including Mr. Graham, then entered the pit and performed their task for a period of time. After lunch, Mr. Graham reportedly reentered the pit, however, he soon exited as he heard a noise. Due to concern initiated by the noise heard within the confined space, TIS, including Mr. Graham, reevaluated the chain on the bucket elevator, and TIS then reentered the pit following its evaluation. It is related that there was movement, but not enough to indicate instability. It is further reported that within minutes, the bucket elevator structure shifted, pinching/pinning Mr. Graham's feet as he worked at the structure's base. It is alleged that Mr. Graham noticed his feet sinking into the scale/material as he removed material from one side of the bucket elevator's base, adjacent to the sloped walls



within the pit. After a period of time, the Georgetown County Fire Department/EMS Rescue Team arrived, made entry, and extracted Mr. Graham from the pit, who was then transported for medical treatment.

Neither S-E-A's research nor review of the provided documents revealed notification of OSHA as to the hospitalization of the TIS employee, nor of an inspection by OSHA into the incident.

The record does not indicate that any structure associated with the pit where TIS was performing its work on December 2, 2016 experienced a failure. It is reported that TIS' activities caused the structure to tilt within the confined space.

TIS described being familiar with the Georgetown facility specific to the project involved in Mr. Graham's incident, as well as in general, due to past performance of its services. In addition, TIS reported previously performing services involving the subject bucket elevator that was involved in the incident.

Mr. Graham had reportedly received training on a number of safety and health topics, including, but not limited to, Confined Space Entry; Globally Harmonized Standard Awareness; Hazardous Waste Operations and Emergency Response Standard; Houston, We Have a Problem; Operator/Technician; Crew Leader; OSHA 10-Hour; Lockout/Tagout; PPE; Pinch Points; Waterblast; and Vacuum Safety. In addition to Mr. Graham's training, TIS possessed a Policy Manual, which included its Safety Program. S-E-A's review of the TIS Safety Program indicates that the ultimate responsibility for safety lies with TIS' top management, and further includes responsibilities of the general manager(s), supervisory personnel, and each employee, as each employee must remain aware and constantly alert to potential hazards. TIS' Confined Space Procedures place additional responsibilities upon their attendants, entrants, and entry supervisors.

**INDUSTRIAL STANDARDS AND REFERENCES DISCUSSION**

The OSH Act of 1970 requires each employer to furnish to each of its employees a place of employment free of recognized hazards that are likely to cause death or serious physical harm. Furthermore, the OSH Act of 1970 requires that each employee comply with occupational safety and health standards, rules, and regulations.

Employers and employees must assess their workplace in order to determine if hazards are, or are likely to be, present. Employees must be properly trained regarding the hazards in which their jobs may expose and/or require them to interact with, as well as the hazards that their work may create. The employer and employees must determine which means and methods they intend to utilize to perform their work, especially when the task they preform creates unique hazards, and further apply the appropriate engineering and administrative controls, and/or the use of PPE.

It is important throughout industry that employees remain aware of their surroundings and the hazards that they may present. It is even more important in industries that offer unique services and involve confined spaces, as the site evolves as each day proceeds and new hazards are presented for employees in which to interact.

Industrial standards and guidelines specific to confined spaces indicate that a confined space is one that may possess a hazardous atmosphere, contains material with the potential to engulf, has walls that



converge and/or floors that slope, may trap or asphyxiate an entrant, or contains any other hazard (e.g., unguarded machinery, physical hazards, heat stress, etc.). In addition to the hazards created by the space itself, supervisors, attendants, and entrants must continue to evaluate and remain aware of hazards that they, themselves, may introduce/create within the space and minimize the risk associated with such hazards. Industrial standards related to OSHA 29 CFR 1910.147 are essential to those operating, servicing, or maintaining machines or equipment. In addition, it is important that those working in areas such as confined spaces are aware and practice energy-isolation techniques when they may be exposed to various types of energy (e.g., electrical, pneumatic, stored, kinetic, thermal, etc.).

Construction is an industry that involves activities such as construction, alteration, and/or repair, including painting and decoration. Construction is regulated by OSHA 29 CFR 1926. Maintenance-type activities are distinguished from construction and regulated by OSHA 29 CFR 1910.

South Carolina OSHA is part of the Department of Labor, Licensing, and Regulation and has adopted OSHA standards and regulations, in addition to a few unique standards.

Could one employer on a "multi-employer worksite" be responsible for violations committed by another employer? This is one of the most vexing issues dealt with under the OSH Act. OSHA Directive CPL-2-00.124, *Multi-Employer Citation Policy*, was created to clarify the Agency's Multi-Employer Citation Policy. On multi-employer worksites, throughout all industry sectors, more than one employer may possess responsibility associated with a hazardous condition and that violates OSHA standards. To determine whether one, or more, employers may possess responsibility, a two-step process must be followed. First, one must determine the role of the employer. Was the employer classified as a Controlling, Creating, Exposing, or Correcting Employer? OSHA only cites Exposing Employers for violation of the General Duty Clause. Second, one must determine if the employers' actions were sufficient to meet their obligations with respect to the OSHA requirements. The extent of the actions of an employer varies based on their category of classification. OSHA recognizes that the extent of the measures that a Controlling Employer must exercise its duty of reasonable care to prevent and detect violations is less than what is required of an employer with respect to protecting their own employees.

Performance specifications in safety are widely practiced and accepted in multi-employer worksite situations. These specifications describe the minimal desirable outcome for a given task or project (e.g., compliance with local, state, and federal rules and regulations) and the provision of a workplace free of recognized hazards. The acceptance of performance specifications on multi-employer worksites is partially based on the various levels of expertise and trade experience. The owner and/or general contractor typically hires multiple entities to provide specialized skills and experience that they, themselves, do not possess.

**SUMMARY**

Based upon the review of the relevant materials, **S-E-A opines the following**:

- **Mr. Graham, an employee of TIS, placed himself in an area of increased risk as he continued to perform his assigned work, removing materials from the permit-required confined space, near the bucket elevator.**



- Mr. Graham and his employer, TIS, were responsible for Mr. Graham's specific safety as he worked within a permit-required space and continued to do so after reportedly exiting the space due to safety concerns.

- TIS, as the Exposing, Creating, and Correcting Employer, possessed responsibility for its employees, including Mr. Graham, as work was performed within the confined space on and prior to December 2, 2016.

- TIS and its employees possessed the responsibility to apply the appropriate engineering and administrative controls, and/or the use of the appropriate PPE, to reduce the risk associated with the hazards to which its employees, including Mr. Graham, may have been exposed.

- ArcelorMittal neither controlled nor possessed responsibility for the means and methods associated with TIS and its employees' task, nor was ArcelorMittal involved in the day-to-day activities associated with CEC's agreed-upon tasks.

- ArcelorMittal neither possessed responsibility for TIS employees nor Mr. Graham's safety specific to his incident on December 2, 2016.

S-E-A hereby certifies the opinions and conclusions expressed herein have been formulated within a reasonable degree of professional certainty. They are based upon the application of reliable principles and scientific methodologies to all of the facts known by S-E-A when this report was issued, as well as knowledge, skill, experience, training, and/or education. Should additional information be discovered, S-E-A reserves the right to appropriately amend or augment these findings.

Prepared By:                                      Technically Reviewed By:


_____                    _____
Jason E. Henthorn                                  Charles A. Guinther
Senior Safety and Health Consultant


JEH:mam





7001 Buffalo Parkway
Columbus, Ohio 43229
614.888.4160 • 800.782.6851
Fax 614.885.8014
www.SEAlimited.com

# Jason E. Henthorn
*jahenthorn@SEAlimited.com*

## Education

*Ohio University*                                           *Athens, Ohio*
Bachelor of Science
Industrial Hygiene
June 1994

## Experience

**Senior Safety and Health Consultant**                    **2002 to Present**
*SEA, Ltd.*                                                *Columbus, Ohio*
Responsible for providing consultation and litigation support for matters involving workplace accidents and/or illness (industry, construction, mining, maritime, etc.). Consultation and support on such matters may further include analysis of contractual and/or industry responsibilities as they relate to workplace safety and multi-employer locations.

**Safety Coordinator**                                     **1994 to 2002**
*ORMET Primary Aluminum Corp.*                             *Hannibal, Ohio*
As an Industrial Hygienist and Safety Coordinator, various safety and health programs were implemented, managed, and audited. The management of such programs also included the investigation of accidents and near misses. Areas of management and investigation included: lockout/tagout, confined space, process safety management (PSM), fall protection, mobile equipment, powered industrial trucks, cranes and rigging, machinery and guarding, welding and cutting, scaffolding, excavations, electrical, etc.

Other programs that involved management and investigative activities were: heat stress, hazard communication, respiratory protection, hearing conservation, ventilation, hazardous materials, personal protective equipment, etc.

Exposure evaluations were conducted and controls were implemented for a variety of industrial and environmental stressors (asbestos, lead, silica, hydrogen fluoride, sulfur, dioxide, chlorine, noise, heat, EMF, mercury, etc.).

Issues between ORMET Corporation, the Occupational Safety & Health Administration (OSHA), and the Mine Safety & Health Administration (MSHA) were managed.

Multi-employer general industry and construction sites were managed within the various facilities.  This included the management of issues between the owners, general contractors, subcontractors, and other controlling entities.

Assisted with the management of the safety and health of employees and contractors at marine terminals, ranging from barges to ships, and trucks to rail.  Safety and health issues included the operation of the terminals, cargo handling, maintenance activity, accident investigation, etc.

Assisted the Security Department with plant security, fire protection, fire brigade training, confined-space rescue, and emergency response.

## Certifications

Certified Indoor Environmentalist (CIE), Indoor Air Quality Association, Inc., Renewal
        Certification received biannually between 2003 and 2009, Certification No. CIE 01594
Certified Asbestos Hazard Evaluation Specialist, State of Ohio, Renewal Certification received
        annually between 2002 and 2006, ID No. 33909
Certificate of Completion, Asbestos Building Inspector Initial Training Course, Training
        Services International, Renewal Certification received annually between 2002 and 2006
Certificate of Completion, Asbestos Management Planner Initial Training Course, Training
        Services International; Renewal Certification received annually between 2002 and 2006
Certificate of Completion, OSHA 40-Hour Health and Safety training course in Hazardous
        Waste Operations, SafeX, Inc., September 2002, Westerville, Ohio
Certificate of Completion, OSHA 8-Hour Health and Safety for Hazardous Waste Operations,
        Renewal Certification received annually between 2003 and 2010

## Publications

"Fracking - Safety and Environmental Concerns," Henthorn, Jason E., Guinther, Charles A., *USLaw*, Fall/Winter 2013

"Fracking - Safety and Environmental Concerns," Henthorn, Jason E., Guinther, Charles A., *Defense Trial Counsel of West Virginia*, Winter 2015

## Professional Affiliations

American Industrial Hygiene Association (AIHA)
Indoor Air Quality Association (IAQA)
American Indoor Air Quality Council (AIAQC)

## Seminars and Additional Education

- 2003 – First Aid in the Workplace, North Coast Polytechnic Institute, Grafton, Ohio
- 2008 – Inexperienced Coal Miner, 40-Hour Training Program, Training Plus,
        Powhatan Point, Ohio
- 2008 – National Workers' Compensation Review, Orlando, Florida
- 2009 – Chinese Drywall Insurance Coverage Teleconference
- 2009 – Chinese Drywall Litigation Teleconference

- 2011 – Mine Safety & Health Administration (MSHA), 80-Hour Training, Miners Training Service, LLC
- 2011 – Spring Conference & PDC, American Industrial Hygiene Association, Stuart, Florida
- 2013 – AIA Contracts:  The Owner-General Contractor Agreement, Columbus, Ohio

## Courses Taught/Presentations

- "Multi-Employer Workplaces & Associated Liabilities," Spring 2011 AIHA Conference, Stuart, Florida, April 2011
- "Safety, Health, and Environmental Network," ALCS Center for Research and Technology, Richmond, Virginia, May 2011
- "Workplace Investigations," Altria Group, Richmond, Virginia, May 2011
- "Fracking:  Oil and Gas Extraction," American Chemical Society, Columbus, Ohio, December 2013
- "SEA, Ltd.," CareWorks Consultants, Inc., Cincinnati, Ohio, November 2014
- "Workplace Safety," NiSource, Columbus, Ohio, June 2015
- "From the Expert's Viewpoint:  Effective Techniques and Bad Practices of Lawyers," DTCWV Young Lawyers Committee, Bridgeport, West Virginia, September 2016
- "Climbing to the Top of Your WC Scaffolding Subrogation Case With Success," Subrogation Litigation:  Skills & Management Conference, Scottsdale, Arizona, April 2017
- "Understanding the Industrial Accident," Ohio Association of Civil Trial Attorneys, Columbus, Ohio, June 2017
- "Coronavirus Disease 2019 (COVID-19)," National Retail and Restaurant Defense Association, via Zoom, May 2020



7001 Buffalo Parkway
Columbus, Ohio 43229
614.888.4160 • 800.782.6851
Fax 614.885.8014
www.SEAlimited.com

# FEE/COST SUMMARY

*Jason E. Henthorn*

Investigative and engineering analyses are conducted on a time-and-expense basis. SEA, Ltd. invoices for activities, including but not limited to, travel time, scene inspection, follow-up investigation, testing and analysis, documentation and report writing, court preparation, deposition and courtroom testimony. The hourly fee per individual is the same, regardless of the activity being performed on the project (travel, scene inspection, communication, deposition, trial, etc.). **The current billable rate per hour for** *Jason E. Henthorn is $315.*

SEA, Ltd. also invoices for any out-of-pocket expenses on an actual cost basis. Other expenses may include, but are not limited to, travel costs, photographs, photocopies, police/fire/agency reports, postage, faxes, international long-distance telephone charges, supplies, equipment or tool rental when required, evidence storage fees, and special testing or laboratory services. Often, chemical laboratory charges are established on a fee-per-sample/per-test basis (i.e., fire debris by gas chromatography). Items not included in the fee-per-sample rate will either be quoted a rate and/or analysis performed at the chemist's regular hourly rate.

*This document is submitted in response to your request. This document is Privileged and Confidential. This document is not to be disseminated to any third party in any other manner or form than indicated. Rates listed are effective 1/1/21. Hourly rates may be subject to change. To ensure accuracy, please inquire about current rates.*

ATLANTA • BALTIMORE/WASHINGTON • CHARLOTTE • CHICAGO • CLEVELAND • COLUMBUS • DENVER • FORT LAUDERDALE • HOUSTON • ST. LOUIS • TAMPA

*00430311.17*



**Testimony Log***

# Jason E. Henthorn

11/1/16 - Present

*Maintained in accordance with Federal Rule 26

| Case Caption | Type | Date | Venue | Court No. |
|---|---|---|---|---|
| Nicholas A. McKee for the Estate of Mary K. Simpson, Deceased v. Northville Lodge No. 1190, et al. | Deposition | 2/8/2017 | Circuit Court of Wayne County, Michigan | 2016-001737-NI |
| Louis Vincent v. PBS Coals, Inc. and Severstal US Holdings, LLC | Trial | 5/9/2017 | Common Pleas Court of Allegheny County, Pennsylvania, Civil Division | GD 13-005222 |
| Rene Cardoso v. Holder Construction Company, et al. | Deposition | 6/30/2017 | United States District Court for District of South Carolina | 2:16-cv-1058-PMD |
| Delane Schoolcraft, et al. v. Eastern Associated Coal, LLC | Deposition | 8/30/2017 | Circuit Court of Monongalia County, West Virginia | 15-C-56 |
| Mike Markalonis v. REM Directional, Inc., et al. | Deposition | 9/12/2017 | District Court of Jefferson County, Texas, 136th Judicial District | D196,185 |
| Trenton Dwain Fikes v. Day and Zimmermann NPS, Inc.; Alabama Power Company, et al. | Deposition | 10/3/2017 | Circuit Court of Walker County, Alabama | CV-15-900100 |
| Hugo A. Martinez and Delores Ramirez on Behalf of the Estate of Javier Garcia, Jr., Deceased, et al. v. David Boone Oilfield Consulting, Inc., et al. | Deposition | 11/14/2017 | District Court of Reeves County, Texas | 15-06-21071-CVR |
| Christine Engleman, Administratrix of Estate of Gregory Sean Engleman, Deceased, et al. v. Martinrea Hopkinsville, LLC and Mark T. Acord | Deposition | 1/9/2018 | Circuit Court of Christian County, Kentucky | 16-CI-00674 |
| Case Performance Properties, LLC v. J.H. Russell Forwarding Co., Inc. and Eurofins Analytical Laboratories, Inc. | Deposition | 1/12/2018 | District Court of Jefferson Parish, Louisiana, 24th Judicial District | 740-961 |
| Christine Engleman, Administratrix of Estate of Gregory Sean Engleman, Deceased, et al. v. Martinrea Hopkinsville, LLC and Mark T. Acord | Trial | 4/13/2018 | Circuit Court of Christian County, Kentucky | 16-CI-00674 |



# Jason E. Henthorn
11/1/16 - Present
*Maintained in accordance with Federal Rule 26

| | | | | |
|---|---|---|---|---|
| Thad Sherman, Terry Smith, and Harold Williamson v. Kalitta Air, LLC | Deposition | 12/14/2018 | Circuit Court of Washtenaw County, Michigan | 16-1008-NO |
| James P. Hughes v. Joseph A. DeLong, et al. | Trial | 1/14/2019 | Common Pleas Court of Philadelphia County, Pennsylvania | 170700414 |
| Kris S. Kiser v. Indianhead Pipeline Services, LLC and Precision Pipeline LLC | Deposition | 4/24/2019 | Circuit Court of Harrison County, West Virginia | 17-C-298-3 |
| James Stamper and Ernie Willman v. metroPCS of Ypsilanti, LLC, et al. | Deposition | 5/28/2019 | Circuit Court of Washtenaw County, Michigan | 17-561-NO |
| Keith Nicholson, for the Estate of Andrew "Drew" Nicholson v. Holly Auto Parts | Deposition | 6/28/2019 | Circuit Court of Oakland County, Michigan | 18-165786-NO |
| Nicholas A. McKee for the Estate of Mary K. Simpson, Deceased v. Northville Lodge No. 1190, et al. | Trial | 9/12/2019 | Circuit Court of Wayne County, Michigan | 2017-013425-NI (Prior No. 2016-001737-NI) |
| Joni Chudzinski, et al. v. Cheektowaga-Sloan Union Free School District | Trial | 10/17/2019 | Supreme Court of Erie County, New York | 809591/2016 |
| Conserv FS, Inc. v. Schoff Farm Service, Inc. | Deposition | 12/18/2019 | Sevententh Judicial Circuit Court of Winnebago County, Illinois | 13 CH 900 |
| Daniel Warren v. Frito-Lay North America, Inc. v. E & J Enterprise Group Inc. dba TDR Transport Yorkville, et al. | Deposition | 1/29/2020 | Circuit Court of Cook County, Illinois | 2017-L-008409 |
| Roger Leipply v. Diamond Cut Lawn & Landscaping Service | Deposition | 1/30/2020 | Common Pleas Court of Columbiana County, Ohio | 2018-CV-00397 |
| Roger Leipply v. Diamond Cut Lawn & Landscaping Service | Trial | 3/5/2020 | Common Pleas Court of Columbiana County, Ohio | 2018-CV-00397 |
| Ronald L Pranger, Jr. v. B & H Electric and Supply, Inc., et al. | Deposition | 11/9/2020 | Superior Court of Jackson County, Indiana | 36D01-1711-CT-0000041 |

00230623.20